**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MICHAEL DIESA and REBECCA TOBACK, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, LLC,<br><br>       Defendant. | Civil Action No. 3:26-cv-00039 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO INTERVENE BY ESPN, LLC**

Plaintiffs Michael Diesa and Rebecca Toback claim that they signed up for the direct-to-consumer streaming service offered by ESPN, LLC ("ESPN") (the "ESPN DTC Service") to watch premier live events from Defendant World Wrestling Entertainment, LLC ("WWE"). They were allegedly "upset" when they found out that they would need to pay the advertised price of $29.99 per month because they thought that they "would be able to access the new DTC Service … at no additional cost" (even though they also say that "WWE fans" knew right away, and were immediately "'furious,'" about "the $29.99 per month" price). First Amended Complaint ("FAC") (Dkt. 18) ¶¶ 43, 47-48. Still, Diesa and Toback chose to subscribe to the ESPN DTC Service as advertised and offered to consumers, but they now claim—on behalf of a putative class of ESPN DTC Service subscribers—that WWE and ESPN violated the Connecticut Unfair Trade Practices Act ("CUTPA").

These claims have no merit, but this is not the forum to resolve them. ESPN DTC Service subscribers like Diesa and Toback agree to individually arbitrate disputes about their

subscriptions and the service, and they agree not to assert them in putative class actions in court. Diesa and Toback know this: they admit in their complaint that "[t]he Disney+, ESPN, and Hulu Subscriber Agreement, which arguably applies to an ESPN DTC Service subscription, does include an arbitration provision and a class-action waiver." FAC ¶ 15 n.13. They just try to avoid their contractual obligations by not naming ESPN as a party, while still alleging that ESPN violated Connecticut law and acted in concert with WWE to do so. *See id*. ¶ 15.

This maneuver fails. ESPN now moves to intervene as a defendant to assert its contractual right to resolve Diesa and Toback's disputes in the way that they agreed—binding individual arbitration—and to oppose the claims of its misconduct. The requirements for intervention as of right under Rule 24(a) are readily met. This motion is timely. ESPN has an interest in enforcing Diesa and Toback's contractual arbitration agreement, which this litigation of their claims would contravene. ESPN also has an interest in defending its agreement with WWE and defending itself against allegations of illegal conduct. And WWE may not adequately protect ESPN's interests, including because WWE is not a party to the Subscriber Agreement and ESPN itself is accused of unlawful conduct. At a minimum, permissive intervention under Rule 24(b) should be allowed. The Court should grant ESPN's motion to intervene.

## BACKGROUND

In August 2025, the ESPN DTC Service became "'the exclusive U.S. domestic home of all WWE Premium Live Events (PLEs).'" FAC ¶ 30. Diesa and Toback claim they were previously subscribed to ESPN by other means. *Id.* ¶¶ 12, 13. Diesa alleges he was subscribed to a "cable-television package" through Xfinity that "includes ESPN." *Id*. ¶ 51. Toback allegedly was "subscribed to YouTube TV's 'Base Plan,' which includes ESPN." *Id*. ¶ 56.

2

Diesa and Toback allegedly signed up for the ESPN DTC Service on or about August 22, 2025 (Diesa) and September 20, 2025 (Toback).  FAC ¶¶ 52, 57.  Diesa "signed up for ESPN's DTC Service so that his nine-year-old son could watch WWE PLEs."  *Id.* ¶ 52.  He complains that the "fee is greater than that which he paid prior to upgrading," but he nonetheless "continues to subscribe."  *Id.* ¶¶ 53-55.  Toback "signed up for ESPN's DTC Service at the cost of $29.99 per month," "watched Wrestlepalooza" in September 2025, and then allegedly "cancelled her subscription to the new DTC Service."  *Id.* ¶¶ 57-59.  By their own admission, then, Diesa and Toback got what they paid for.

All ESPN DTC Service subscriptions are governed by the terms of the "Disney+, ESPN, and Hulu Subscriber Agreement" (the "Subscriber Agreement").  FAC ¶ 15 n.13.  The Subscriber Agreement contains "an arbitration provision and a class-action waiver."  *Id*.  Trying to dodge these provisions, the FAC emphasizes that ESPN and "its parent company" "are *not* parties to this action" named in the complaint.  *Id.* ¶ 15 (emphasis in original).

Instead, the FAC asserts three claims against WWE alone, on behalf of a proposed class of ESPN DTC Service subscribers who "were already ESPN subscribers via another provider(s) or means."  FAC ¶ 60.  Count I alleges that WWE violated CUTPA; Count II alleges that WWE engaged in a conspiracy with ESPN to violate CUTPA; and Count III alleges that WWE aided and abetted ESPN's own violation of CUTPA.  *Id*. ¶¶ 70-92.  Both Count II and Count III expressly allege that ESPN violated CUTPA.  *See id.* ¶¶ 79 ("WWE *and* ESPN … have violated CUTPA" (emphasis in original)), 86 ("ESPN's violation of CUTPA").

## PROCEDURAL HISTORY

This action is in its earliest stages.  WWE was served with the operative complaint on January 22, 2026 (Dkt. 19).  WWE's deadline to answer or respond to the operative complaint is

April 13, 2026 (Dkt. 23). As required by Local Rule 26(f)(1), counsel for WWE and counsel for Diesa and Toback jointly filed a Rule 26(f) report on March 25, 2026, which indicated that ESPN anticipated filing this motion to intervene and then a motion to compel arbitration. No scheduling order has been entered and there has been no discovery.

## ARGUMENT

### I.    ESPN May Intervene In This Action As Of Right

Under Rule 24(a), the Court must permit anyone to intervene who "(1) timely file[s] an application, (2) show[s] an interest in the action, (3) demonstrate[s] that the interest may be impaired by the disposition of the action, and (4) show[s] that the interest is not protected adequately by the parties to the action." *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). ESPN satisfies each requirement.

*First*, ESPN's motion is timely. To assess timeliness, courts generally consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Mehedi v. Memry Corp.*, 2017 WL 2873224, at *4 (D. Conn. July 5, 2017). Here, the operative complaint was filed only about two months ago. *See, e.g.*, *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86-87 (D. Conn. 2014) (timely application three months after action commenced). "More important," nearly nothing has "occurred along the litigation continuum *during* this period of time." *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 2014 WL 6388787, at *5 (D. Conn. Nov. 14, 2014) (emphasis in original) (citation omitted). "There has been no discovery, and a discovery schedule has not even been set." *Granite State Ins. Co. v. KM Tactical, LLC*, 2025 WL 1502019,

at *5 (S.D.N.Y. May 27, 2025).[1]  WWE has not even responded to the complaint.  "Under such circumstances, courts typically find a motion to intervene to be timely."  *Id.*  There is, therefore, no arguable "prejudice … resulting from" the timing of ESPN's request.  *N. River Ins. Co. v. O&G Indus., Inc.*, 315 F.R.D. 1, 4 (D. Conn. 2016).  Meanwhile, there would be "prejudice to" ESPN "if the motion is denied" because ESPN would be unable to defend its contractual right to arbitrate Diesa and Toback's claims individually and to defend itself against allegations of violating CUTPA, both on its own and in concert with WWE.  *Id.* (granting motion to intervene where any "prejudice to North River caused by [the timing of] intervention is not substantial and certainly not greater than the prejudice faced by the proposed intervenors if the motion were to be denied").  There are no "unusual circumstances militating" against a finding of timeliness.  *Id.*

*Second and third*, ESPN has several interests that this action may impair.  To start, the proceedings in this Court contravene ESPN's right to individually arbitrate Diesa and Toback's disputes (and the arbitrability of those disputes).  Diesa and Toback agreed to the Subscriber Agreement that includes an arbitration provision with a delegation clause and a class action waiver.  FAC ¶ 15 n.13.  Yet they filed this action in court, on behalf of a putative class of "[a]ll individuals … who subscribed to ESPN's new DTC Service" and so who necessarily also agreed to individually arbitrate disputes.  *Id.* ¶ 60.  ESPN has a "'direct, substantial, and legally protectable'" interest in enforcing Diesa and Toback's arbitration agreement and resisting their effort to circumvent it—for themselves and other ESPN DTC Service subscribers.  *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (quoting *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).

---

[1] Intervention will not affect the Court's jurisdiction under the Class Action Fairness Act because the FAC alleges minimal diversity.  *See* FAC ¶¶ 12-14; *see* 28 U.S.C. § 1332(d)(2).

Courts regularly permit intervention for this purpose.  *See, e.g.*, *Bone v. XTO Energy, Inc.*, 2023 WL 5431139, at *2, 4 (D. Del. Aug. 23, 2023) (granting motion to intervene because proposed intervenor had a "significantly protectable interest" in "resolving [disputes] through binding arbitration" and was filing a motion to compel arbitration); *Brown v. Firstsource Advantage, LLC*, 2018 WL 4538412, at *3 (E.D. Pa. Sept. 21, 2018) (granting intervention given proposed intervenor's "interest in arbitrating these types of disputes"); *Clean Earth, Inc. v. Endurance American Ins.*, 2016 WL 5422063, at *7 (D.N.J. Sept. 28, 2016) (granting motion to intervene to assert "substantial interest in arbitrating the claims," and granting motion to compel arbitration).  In *Brown*, for example, the court granted American Express's motion to intervene as a defendant in a putative class action because, "if the arbitration provision of [American Express's] Cardmember Agreement does govern" the dispute, then "American Express has a specific interest in ensuring that those claims are resolved in its chosen forum."  2018 WL 4538412, at *2.[2]  So too here.

Not granting intervention would also impair ESPN's interest in defending itself against meritless allegations that ESPN violated the law.  In no uncertain terms, Diesa and Toback allege that ESPN violated CUTPA and conspired to do so.  *See, e.g.*, FAC ¶ 79 ("ESPN … ha[s] violated CUTPA"); *id.* ¶ 80 ("ESPN has intentionally, knowingly, willfully, and/or recklessly engaged in an unfair method(s) of competition and/or an unfair and/or a deceptive act(s)."); *id.*

---

[2] WWE itself has strong grounds to move to compel Diesa and Toback to arbitrate their claims based on the Subscriber Agreement.  *See, e.g.*, *Dowe v. Leeds Brown L., P.C.*, 419 F. Supp. 3d 748, 757-758 (S.D.N.Y. 2019) (a non-signatory can enforce arbitration agreements through equitable estoppel), *aff'd sub nom. Dowe v. Leeds, Morelli & Brown PC*, 2023 WL 3986373 (2d Cir. June 14, 2023).  But even with respect to such a motion by WWE, ESPN would have "a legally protectible interest in participating in a proceeding, such as this one, which may affect the interpretation and/or enforceability of the arbitration provisions contained in" its Subscriber Agreement.  *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991) (granting motion to intervene).

¶ 86 (referencing "ESPN's violation of CUTPA").  Indeed, for Diesa and Toback to prevail on two of their three claims (Counts II and III), there must necessarily be a legal determination that ESPN violated CUTPA.  *See Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 114 (D. Conn. 2010) (civil conspiracy requires "a combination between two or more persons … to do … an unlawful act or a lawful act by … unlawful means" in order "to impose liability on all those who agreed to join"); *Dunn v. Bellucci-Maus*, 2025 WL 2694860, at *9 (D. Conn. Sept. 22, 2025) (aiding and abetting requires that "the party whom the defendant aids … perform[s] a wrongful act that causes an injury").  CUTPA liability carries significant exposure.  *See, e.g.*, Conn. Gen. Stat. §§ 42-110m and 42-110o(b).  Moreover, Diesa and Toback seek to establish those claims on behalf of a putative class.  *See* FAC ¶ 64.  Should those claims prevail, Diesa, Toback, or a class member could attempt to wield a favorable judgment against ESPN in subsequent litigation.  *See Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79-80 (2d Cir. 2019).  ESPN would vehemently contest that attempt, but as a "practical matter," "an adverse decision" could potentially expose ESPN to liability and so would impair its interests. *New York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975).  ESPN therefore has a "'direct, substantial, and legally protectable'" interest in defeating those allegations as a party.  *Brennan*, 260 F.3d at 129.

   *Finally*, WWE's "adequacy of representation" of ESPN's interests is not "assured." *Brennan*, 260 F.3d at 132-133.  Most directly, while WWE itself can move to compel arbitration of Diesa and Toback's claims, it is not a party to the Subscriber Agreement, so its grounds and arguments for arbitration would be different.  *See supra* at 6 n.2.  ESPN is Diesa and Toback's contractual counterparty in the Subscriber Agreement, so ESPN is best suited to assert its own contractual "defenses, like the arbitration provision."  *Brown*, 2018 WL 4538412, at *3.

7

Additionally, while Diesa and Toback allege that WWE and ESPN acted "in concert" in violating CUTPA, they allege separate and distinct conduct. *See, e.g.*, FAC ¶¶ 33-42 (alleging different statements and marketing efforts by and on WWE's and ESPN's respective platforms). WWE might not adequately defend against these allegations about ESPN's own conduct. And even where a party and an intervenor are "working toward similar ends," the intervenor "should not be denied entrance into [the] action" where, as here, there is "compelling" "pragmatism" to "resolving all known issues … in a single lawsuit involving all concerned parties." *Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, 2015 WL 5676786, at \*14 (E.D.N.Y. Sept. 24, 2015). Regardless, courts are "liberal in finding" this fourth requirement satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Wright & Miller's Federal Practice & Procedure § 1909 (3d ed. 2024).

With each factor met, the Court should grant intervention under Rule 24(a).

## II.    The Court Should Allow ESPN To Intervene Permissively

Alternatively, the Court should let ESPN intervene under Rule 24(b). Permissive intervention under Rule 24(b) is discretionary. *See, e.g.*, *Etsy*, 300 F.R.D. at 88. It is available to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). There can be no question that permissive intervention is available to ESPN, whose defenses—that Diesa and Toback are bound to individual arbitration and that ESPN did not violate CUTPA or conspire to or aid and abet a CUTPA violation— present the same central questions as the main action. The "'principal consideration,'" then, "is 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Etsy*, 300 F.R.D. at 88 (citation omitted). It will not, for the reasons stated—this case is

in its earliest stages, no scheduling order has been issued, and there has been no discovery. *See supra* at 4-5.  Permissive intervention is warranted.

## CONCLUSION

The Court should grant ESPN's motion to intervene as of right under Rule 24(a) or, in the alternative, permit ESPN to intervene under Rule 24(b).

Dated:  March 27, 2026

Respectfully submitted,

*/s/ Deirdre M. Daly*
FINN DIXON & HERLING LLP
Deirdre M. Daly (ct23128)
David Allen (ct30827)
6 Landmark Square
Stamford, CT 06901
Tel: (203) 325-5050
Fax: (203) 325-5001
ddaly@fdh.com
dallen@fdh.com

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Alan E. Schoenfeld
(*pro hac vice* forthcoming)
Ryan Chabot
(*pro hac vice* forthcoming)
Marissa M. Wenzel
(*pro hac vice* forthcoming)
Nelson S. Castaño
(*pro hac vice* forthcoming)
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Tel: (212) 937-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
ryan.chabot@wilmerhale.com
marissa.wenzel@wilmerhale.com
nelson.castano@wilmerhale.com

*Attorneys for ESPN, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Deirdre M. Daly
Deirdre M. Daly

*Attorney for ESPN, LLC*