**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MICHAEL DIESA and REBECCA TOBACK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, LLC,<br><br>Defendant. | Civil No. 3:26-cv-00039-SFR<br><br><br><br>September 18, 2026 |

**RULING AND ORDER ON MOTIONS TO INTERVENE**

Last August, World Wrestling Entertainment, LLC ("WWE") announced that it would be changing television streaming services from Peacock to ESPN. (Am. Compl., Doc. No. 18, ¶ 1.) Some wrestling fans who had previously subscribed to ESPN's streaming service, including the plaintiffs Michael Diesa and Rebecca Toback, felt misled by WWE's and ESPN's public statements about what the programming would cost after the transition. (*See id.* ¶ 8.) On behalf of themselves and others similarly situated, Mr. Diesa and Ms. Toback ("Plaintiffs") sued WWE, alleging among other things that the company's public statements constituted violations of the Connecticut Unfair Trade Practices Act, or "CUTPA." (*Id.* ¶¶ 71-76.) They did not sue ESPN.

Two members of the ESPN family of companies have now moved to intervene in the case. (Mot. to Intervene by ESPN, LLC, Doc. No. 34 ("ESPN Motion"); Mot. to Intervene and Incorporated Mem. of Law by BAMTech, LLC, Doc. No. 49 ("BAM Motion").) The two companies note that, although the Plaintiffs sued only WWE, they expressly allege that ESPN also violated CUTPA and that it conspired with WWE to do so. (*E.g.*, Mem. of L. in Supp. of Mot. to

Intervene by ESPN, LLC, Doc. No. 34-1, at 1 ("ESPN Mem."); *see also* Am. Compl., Doc. No. 18, ¶¶ 78-84.) Wishing to defend themselves from these allegations, and wishing to see those claims addressed in arbitration rather than federal court, the companies have claimed a right to intervene in this case under Rule 24(a) of the Federal Rules of Civil Procedure. (ESPN Motion at 1; BAM Motion at 1.) In the alternative, they ask the Court to grant them permissive intervention under Rule 24(b). (ESPN Motion at 1; BAM Motion at 1.)

Having carefully considered the matter, the Court concludes that ESPN is not entitled to intervene as a matter of right. (*See* discussion *infra* Section II.B.) Intervention under Rule 24(a) requires, among other things, a showing that the proposed intervenor's interest in the litigation will not be sufficiently protected by the existing defendant, and ESPN has not made that showing with the "rigor[]" required by the Second Circuit's Rule 24(a) case law. (*See infra* Section II.B.) But its arguments for permissive intervention under Rule 24(b) are compelling. (*See* discussion *infra* Section II.C.) The motions will therefore be granted. (*See infra* Section III.)

## I. Background

WWE is an entertainment company that presents professional wrestling bouts in arenas and on television. (*See* Am. Compl., Doc. No. 18, ¶¶ 20-21.) It designates some of its fight cards as "Premium Live Events," or "PLEs." (*Id.* ¶ 1.) Until recently, wrestling fans could watch WWE's PLEs on NBC's Peacock streaming service for an $11 monthly fee. (*Id.* ¶ 3.) But in August of 2025, WWE moved its PLEs to ESPN's direct-to-consumer ("DTC") service. (*Id.* ¶ 1.)

This case concerns WWE's and ESPN's representations about the prices wrestling fans would pay to continue watching PLEs after the move. The plaintiff Michael Diesa says that he already paid for ESPN's programming through his Xfinity cable television package (*id.* ¶ 51), and his co-plaintiff Rebecca Toback says that she did the same through YouTube TV. (*Id.* ¶ 56.) The

Plaintiffs claim that, in press releases issued jointly with ESPN, WWE "led consumers to believe that anyone who already paid to receive ESPN . . . would be able to access the new DTC Service and the PLEs at no additional cost." (*Id.* ¶ 4.) They say that this turned out not to be the case, and they both had to pay a separate fee to watch WWE's "Wrestlepalooza" PLE on ESPN in September of 2025. (*Id.* ¶¶ 47, 52-54, 57-59.) Mr. Diesa continues to pay the fee, but Ms. Toback canceled her subscription. (*Id.* ¶¶ 55, 59.)

The Plaintiffs' lawsuit is in three counts. (*See generally id.*) In Count One, they allege that WWE violated CUTPA by engaging in "actually deceptive" practices that "offend the public policy of Connecticut, including, but not limited to, the state's policies of promoting honest advertising, eliminating deceptive marketing practices, and ensuring transparency in pricing." (*Id.* ¶ 74.) They argue that WWE's press releases and other statements constituted, "in essence, a type of 'bait and switch' advertising." (*Id.* ¶ 74 n.63.) In Count Two, the Plaintiffs allege that WWE conspired with ESPN to violate CUTPA by "form[ing] a combination and join[ing] together . . . to do and perform an unlawful act(s)." (*Id.* ¶ 81.) And in Count Three, they allege that WWE "aided and abetted ESPN's violation of CUTPA." (*Id.* ¶ 86.) They seek damages, including punitive damages; "reasonable attorneys' fees and expenses"; "an award of the costs of this action"; and "any injunctive relief necessary to preclude WWE from (a) continuing to violate CUTPA, (b) conspiring with ESPN to violate CUTPA, and/or (c) aiding and/or abetting ESPN in its violation(s) of CUTPA." (*Id.* at 30.)

As noted above, the Plaintiffs sued only WWE—they did not sue ESPN. (*Id.* ¶ 15.) They acknowledge that "[t]he Disney+, ESPN, and Hulu Subscriber Agreement, which arguably applies to an ESPN DTC subscription, does include an arbitration provision and a class-action waiver." (*Id.* ¶ 15 n.13.) Seeking to represent a class of "all others similarly situated" to themselves, which

they define as "[a]ll individuals located throughout the United States and its territories who subscribed to ESPN's new DTC Service between August 6, 2026 and September 20, 2025, and paid a monthly fee . . . even though they were already ESPN subscribers" (*id.* ¶ 60), the Plaintiffs plainly wish to avoid tangling with the arbitration clause and class action waiver. They did not list any ESPN entity among the defendants, and their complaint underscores, "[f]or the avoidance of any doubt," that they intend for neither ESPN nor its corporate parent to be a party. (*Id.* ¶ 15.)

The Plaintiffs nevertheless attack ESPN in their complaint. For example, they charge ESPN with "material, deceptive, and false public statements concerning the availability of the DTC Service and its PLEs." (*Id.* ¶ 7.) They allege that, shortly after the licensing deal, "ESPN wanted to have a marquee WWE event in September to support the launch of ESPN's direct-to-consumer offering." (*Id.* ¶ 42) (internal quotation marks and citation omitted). In their view, WWE created Wrestlepalooza to mollify its new partner, and ESPN allegedly "leveraged the temporal proximity of the event to create a sense of urgency in its marketing strategy." (*Id.*) "WWE fans . . . were lured in by ESPN and WWE's brazen misrepresentations," and "were surprised—and upset—to learn that they would have to pay $29.99 per month to watch that PLE." (*Id.* ¶ 48.) In Count Two, the Plaintiffs assert that "ESPN has intentionally, knowingly, willfully, and/or recklessly engaged in an unfair method(s) of competition and/or an unfair and/or a deceptive act(s) and/or practice(s);" WWE's liability under that count allegedly arises from having "joined in, and furthered the commission of ESPN's injury-producing actions." (*Id.* ¶ 80.) In Count Three, the Plaintiffs lodge a similar charge of "unfair method(s) of competition" against ESPN. (*Id.* ¶ 87.) The asserted basis for WWE's liability is that it "provided assistance to ESPN in its illegal and/or tortious activity." (*Id.* ¶¶ 87-88.)

The Plaintiffs did not direct these allegations against any particular member of the ESPN family of companies. (*See generally id.*) Instead, they seemingly directed them against the ESPN brand. (*See generally id.*) They apparently did so because they did not then know which ESPN entity contracted with WWE. (*See* Tr. of Hr'g, Doc. No. 71, at 6:2-4.) They also initially received mixed signals about which ESPN entity was the party to the subscriber agreement. (*Id.* at 5:10-20; *compare* ESPN Mem. at 2 (brief by ESPN, LLC, referring to the subscriber agreement as "its" agreement) *with* BAM Motion at 2 (stating that "BAMTech is the entity designated as ESPN in the Subscriber Agreement").)

In any event, the Plaintiffs served the complaint,[1] and WWE appeared through counsel. (Notice of Appearance, Doc. No. 20.) WWE then sought a sixty-day extension of time on its response to the complaint, citing a need for "additional time to review the lengthy complaint's allegations and multiple causes of action." (Mot. for Extension of Time, Doc. No. 21.) The Plaintiffs consented to WWE's motion (*id.*), and the Court granted it later the same week. (Order, Doc. No. 23.)

Thirty-nine days into the sixty-day extension period, "ESPN informed the parties that it intend[ed] to move to intervene." (Rule 26(f) Report., Doc. No. 29, at 6.) ESPN added that, "if intervention is granted," it intended to "move to compel arbitration of all Plaintiffs' claims, including all claims against WWE." (*Id.*) WWE consented to ESPN's intervention efforts, and

---

[1] The Plaintiffs' original complaint did "not provide sufficient information from which the court [could] confirm that it ha[d] subject-matter jurisdiction over this purported class action[,]" because it did not describe their own citizenship, nor the citizenship of the members of the WWE limited liability company. (Order, Doc. No. 10.) The Plaintiffs quickly amended their complaint to address the omission (Am. Compl., Doc. No. 18), and they included the amended pleading in their initial service package. (Aff. of Serv., Doc. No. 19.) In this opinion, all references to the "complaint" shall be construed as referring to the amended complaint at Doc. No. 18, unless expressly stated otherwise.

signaled that it would "join in the motion to compel arbitration." (*Id.*) The Plaintiffs "oppose[d] ESPN's intervention" and stated that they would "oppose any motion to compel arbitration." (*Id.*)

Four days later, ESPN, LLC[2] "move[d] to intervene as a defendant in this action as of right pursuant to Federal Rule of Civil Procedure 24(a)." (ESPN Motion at 1.) Alternatively, the company sought permissive intervention under Rule 24(b). (*Id.*) Soon afterward, the Plaintiffs "raised questions about the relationship among various ESPN entities and their relationship with the ESPN DTC Service and Subscriber Agreement," having noted that ESPN, LLC is not explicitly identified as a party in that agreement. (BAMTech Motion at 1-2.) ESPN, LLC continued to believe that it had standing "to defend allegations against ESPN and enforce its Subscriber Agreement," but "[i]n an abundance of caution," its subsidiary BAMTech, LLC filed its own motion to intervene. (*Id.* at 2.) BAMTech states that it is the entity specifically "designated as ESPN" in the subscriber contract. (*Id.*)

The Plaintiffs moved the Court for an order allowing a period of discovery before their opposition to the two intervention motions would fall due (Mot. to Enter Sched. Order, Doc. No. 53), and ESPN moved for entry of a briefing schedule without a discovery period. (Mot. for Sched. Order, Doc. No. 50.) The presiding District Judge, the Honorable Sarah F. Russell, referred the two intervention motions and the two scheduling motions to me, Magistrate Judge Thomas O. Farrish, for resolution. (Order Referring Case, Doc. No. 54.) I then held a videoconference, at which the Plaintiffs' counsel explained that he was seeking discovery in part to determine "which

---

[2] The conglomerate popularly known as "ESPN" is composed of several corporate entities, including the two that have sought to intervene in this case—ESPN, LLC and BAMTech, LLC. (*See* Disclosure Stmt. By ESPN, LLC, Doc. No. 35; Disclosure Stmt. By BAMTech, LLC, Doc No. 48.) From this point forward, when the Court uses the term "ESPN" in this opinion, it will refer to ESPN, LLC and BAMTech, LLC together.

ESPN entity is a party to the subscriber agreement" and which is "the actual entity that entered into the agreement with WWE." (Tr. of Hr'g, Doc. No. 71, at 5:4-6:4.)

Counsel for ESPN responded and explained the corporate arrangements. He confirmed that "BAMTech is the party named in the subscriber agreement." (*Id.* at 9:12-13.) He added that ESPN, LLC moved to intervene to "defend[] against the allegations of misconduct" lodged against "ESPN" in the complaint, and because it believed that it had an independent right to enforce its subsidiary's arbitration clause. (*Id.* at 9:4-16) These "statements and representations" made the Plaintiffs "willing to file their opposition(s) to the two pending motions to intervene without first obtaining any discovery." (Joint Status Report, Doc. No. 72.) The Court then issued a scheduling order, setting dates for the submission of opposition and reply briefs on the intervention motions. (Order, Doc. No. 73.)

While these events were taking place, WWE moved to compel arbitration. (Mot. to Compel Arbitration, Doc. No. 62.) Although BAMTech, LLC is the named party in the ESPN DTC Subscriber Agreement and WWE is not, WWE asserts that it can compel the Plaintiffs to arbitrate their claims under principles of equitable estoppel. (Mem. of L. in Supp. of Mot. to Compel Arbitration, Doc. No. 62-1, at 20.) And although neither ESPN entity has yet been allowed to intervene in the case, the motion was filed jointly on behalf of WWE; ESPN, LLC; and BAMTech, LLC. (Mot. to Compel Arbitration, Doc. No. 62.) The degree of alignment between WWE and ESPN will be relevant to the two intervention motions, as will be discussed below.

Ultimately, the Plaintiffs submitted a single opposition memorandum opposing both motions. (Pls.' Mem. in Opp'n to Mot. to Intervene by ESPN, LLC and Mot. to Intervene of BAMTech, LLC, Doc. No. 77 ("Opp'n").) ESPN filed a consolidated reply brief. (Reply in Further Supp. of Mots. to Intervene by ESPN, LLC and BAMTech, LLC, Doc. No. 78 ("Reply").)

The Court then held oral argument (Minute Entry, Doc. No. 84), at which the Plaintiffs cited additional cases. The motions are ripe for decision.

## II. Discussion

### A. Intervention Generally

"Federal Rule of Civil Procedure 24 permits a non-party to intervene in ongoing litigation as of right or by permission of the court." *Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014), *aff'd*, 770 F.3d 1051 (2d Cir. 2014). "The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). The rule "attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) (citing *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 412 (5th Cir. 1991)).

Intervention as of right is governed by Rule 24(a). Subsection (a)(1) provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Subsection (a)(2) states that the court must permit intervention by anyone who, '[o]n timely motion . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impeded the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

Permissive intervention is governed by Rule 24(b). Subsection (b)(1)(A) states that, "[o]n timely motion, the court may permit anyone to intervene who . . . is given a conditional right to

intervene by a federal statute." Fed. R. Civ. P. 24(b)(1)(A). Subsection (b)(1)(B) permits intervention by anyone who shows, in a "timely motion," that he or she "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

The two forms of intervention will be discussed separately below, but certain principles apply to both. First, "the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of New York*, No. 19-cv-11285 (KMK), 2020 WL 5658703, at *5 (S.D.N.Y. Sep. 23, 2020). Second, in determining whether the movant has met this burden, "courts generally accept as true an applicant's well-pleaded, non-conclusory allegations," unless they "are contradicted or unsupported by credible proof," "or are unproven by a clear showing." *Floyd*, 302 F.R.D. at 97 (citations and internal quotation marks omitted). Third, "except for allegations [that are] frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800 (2d Cir. 2022) (quoting *Oneida Indian Nation of Wisc. v. State of New York*, 732 F.2d 261, 265 (2d Cir. 1984)).

"District courts have broad discretion to grant or deny a motion to intervene . . . ." *In re OpenAI, Inc., Copyright Infringement Litig.*, No. 25-md-3143 (SHS) (OTW), 2025 WL 1726973, at *1 (S.D.N.Y. June 20, 2025) (citing *High Farms, LLC v. King*, No. 16-cv-736 (NGG) (PK), 2021 WL 1137995, at *11 (E.D.N.Y. Mar. 25, 2021)). Because the rule attempts to harmonize two competing policies, and because the two policies may weigh differently in different situations, "[m]otions to intervene are highly fact-specific and tend to resist comparison to prior cases." *Floyd*, 302 F.R.D. at 83 (citing *Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y. 1999)). And "[b]ecause 'prior decisions are not always reliable guides,' courts are

guided by practical and equitable considerations in an effort to balance" the two policy goals reflected in the rule. *Id.* (quoting *Pitney Bowes*, 25 F.3d at 69).

**B. Intervention As Of Right Under Rule 24(a)**

A non-party has a right to intervene under Rule 24(a)(2)[3] "when all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). "This four-part test 'is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria.'" *Mehedi v. Memry Corp.*, No. 17-cv-809 (CSH), 2017 WL 2873224, at *4 (D. Conn. July 5, 2017) (quoting *S&S Kings Corp. v. Westchester Fire Ins. Co.*, No. 16-cv-2016 (RA), 2017 WL 396741, at *1 (S.D.N.Y. Jan. 27, 2017)). "Nonetheless, '[a] would-be intervenor's failure to meet all of these requirements justifies the denial of its motion'" under Rule 24(a). *Id.* (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001)).

As stated in the introduction, and as will be discussed further in subsection II.B.4 below, the Court concludes that ESPN has not made the "more rigorous showing of inadequacy" of representation required by the Second Circuit's Rule 24(a) case law. With the fourth factor unsatisfied, it might initially seem superfluous to discuss the other three. The Court will

---

3 Rule 24(a)(1) governs intervention in cases where the movant has been "given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). In this case, ESPN claims no such right.

nevertheless discuss all four requirements, in part because they are relevant to the Rule 24(b) analysis as well. (*See* discussion *infra* Section II.C.)

***1. Timeliness***

"Under Rule 24, the threshold inquiry is whether the application for intervention is timely." *Id.* Courts have observed that "[t]he timeliness of a motion to intervene 'is not a subject that easily lends itself to a precise definition.'" *In re Teva Sec. Litig.*, No. 17-cv-558 (SRU), 2020 WL 12045998, at *3 (D. Conn. Oct. 20, 2020) (quoting *Butler, Fitzgerald & Potter*, 250 F.3d at 182)). The timeliness requirement is therefore "flexible," and "the decision is one entrusted to the district judge's sound discretion." *Floyd*, 770 F.3d at 1058. The Second Circuit has nonetheless identified four factors "to consider in determining timeliness . . . (a) the length of time the applicant knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a finding of timeliness." *MasterCard Int'l, Inc.*, 471 F.3d at 390 (quoting *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987)). While the timeliness requirement is flexible and its application is within the court's discretion, it is "firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 541-42 (S.D.N.Y. 1974)).

Applying these principles to this case, I conclude that the ESPN Motions are timely, for several reasons. First, they were filed less than seventy-five days after the Plaintiffs served WWE with the original complaint, and courts typically regard intervention motions as timely when they are filed that early. *See, e.g.*, *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86-87 (D. Conn. 2014) (holding

that proposed intervenors' motions were timely when they "moved to intervene in this action just over three months after it was commenced"). Second, courts often regard Rule 24 motions as timely where, as here, they are filed before the commencement of discovery. *E.g.*, *Granite State Ins. Co. v. KM Tactical, LLC*, No. 23-Civ.-7769 (ALC) (GS), 2025 WL 1502019, at *5 (S.D.N.Y. May 27, 2025); *Hulinsky v. Cnty. of Westchester*, No. 22-Civ.-6950 (PMH), 2023 WL 3162428, at *3 (S.D.N.Y. Apr. 28, 2023); *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, No. 12-cv-269 (JBA), 2014 WL 6388787, at *5 (D. Conn. Nov. 14, 2014). In the only case cited by the Plaintiffs on these two points (Opp'n at 8 n.10), the proposed intervenor did not file its motion until "discovery was nearly completed and the case was on the eve of trial." *EEOC v. United Air Lines, Inc.*, 515 F.2d 946, 948 (7th Cir. 1975). Third and most importantly, the Plaintiffs have not persuasively explained how they have been prejudiced by the timing of the motions. (*See* Opp'n at 8 n.10.) They cite WWE's request for an extension of time on its response to the complaint, and they suggest that the request was made as a "maneuver" to buy time for its arbitration motion and ESPN's intervention motions, and that such "maneuvers . . . should not be countenanced." (*Id.*) But they do not satisfactorily explain how they have been prejudiced by the timing of the motions, as that term has been used in the context of Rule 24.[4]

---

[4] Citing an opinion that I authored in 2021, ESPN asks me to reject the Plaintiffs' timeliness arguments on the additional ground that they have been waived. (Reply at 2.) The Plaintiffs raised those arguments not in the body of their opposition memorandum, but rather in a long, single-spaced footnote. (Opp'n at 8 n.10.) In *Dayle B. v. Saul*, No. 20-cv-359 (TOF), 2021 WL 1660702, at *10 n.8 (D. Conn. Apr. 28, 2021), I observed that "[c]ourts in this circuit have made clear that arguments in footnotes are waived." Citing that statement, ESPN argues that "Diesa and Toback waive[d] timeliness by relegating their response to a footnote." (Reply at 2.) Because I have decided the timeliness issue on other grounds, this argument does not need to be addressed.

I will nevertheless pause to clarify what I wrote in *Dayle B.* When courts in this circuit have deemed arguments made in footnotes to be waived, they have typically done so because the argument was too cursory to merit consideration, *see, e.g., Marnell v. Comm'r of Soc. Sec.*, No. 17-cv-6201P, 2018 WL 3620152, at *10 n.6 (W.D.N.Y. July 30, 2018); *cf. Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (noting that "a contention is not sufficiently presented for appeal if

### *2. Interest in the Action*

Under Rule 24(a), a proposed intervenor must "claim[] an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). As the Second Circuit has explained, "[f]or an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Wash. Elec. Co-op., Inc.*, 922 F.2d at 97). Conversely, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001).

ESPN asserts two "direct, substantial, and legally protectable interests" in this action. (ESPN Mem. at 5-7.) First, both ESPN, LLC and BAMTech claim "an interest in enforcing Diesa and Toback's arbitration agreement and resisting their efforts to circumvent it." (*Id.* at 5.) They concede that BAMTech—and not ESPN, LLC—was the named party in the Subscriber Agreement that contained the arbitration clause (Tr. of Hr'g, Doc. No. 71, at 9:12-13; *see also* Reply at 3 n.1), but they assert that ESPN, LLC nonetheless has an interest in enforcing the clause because "well-established precedent allow[s] corporate parents to enforce arbitration agreements by their wholly owned subsidiaries." (Reply at 3) (citing cases). Second, they argue that "[n]ot granting

---

it is conclusorily asserted only in a footnote"), or because the argument was placed in a footnote in a transparent attempt to elude a page limit. *See, e.g., Skibniewski v. Comm'r of Soc. Sec.*, No. 19-cv-506, 2020 WL 5425343, at *3 n.1 (W.D.N.Y. Sept. 10, 2020). Neither circumstances applies here, because the Plaintiffs' argument is not cursory and their brief is many pages short of Local Rule 7(a)5's forty-page limit. The argument's placement instead appears to have been the product of a certain writing style, more common in law reviews and judicial opinions than in advocates' briefs, in which the author carries on a parallel conversation in the footnotes. While the use of that style carries risk, I would not have found that it constituted a waiver in this case.

intervention would also impair ESPN's interest in defending itself against . . . allegations that ESPN violated the law." (ESPN Mem. at 6.)

The Court agrees with ESPN that its interest in the enforcement of the arbitration clause is sufficiently "direct, substantial, and legally protectable" to support intervention. Other courts have reached similar conclusions in similar cases. In *Bone v. XTO Energy, Inc.*, for example, oil field workers who had obtained work through the "RigUp" job-matching app sued the company that engaged them, claiming to be employees entitled to overtime under the Fair Labor Standards Act. No. 21-cv-1460, 2023 WL 5431139, at *1 (D. Del. Aug. 23, 2023). RigUp's owner, RUSCO, moved to intervene, citing its interest in enforcing the arbitration clause to which the workers agreed when they signed up for the app. *Id*. at *4. The court agreed that "RUSCO has a significantly protectable interest in [the] litigation," namely, "to protect its interest in resolving through binding arbitration employment disputes with the [workers] who have used its app." *Id.* Similarly, in *Brown v. Firstsource Advantage, LLC*, a debtor sued one of American Express's outside debt collectors under the Fair Debt Collection Practices Act. No. 17-5760, 2018 WL 4538412, at *1 (E.D. Pa. Sep. 21, 2018). American Express moved to intervene, "assert[ing] a direct, protectable interest in enforcing the arbitration provision" of its cardholder agreement. *Id.* at *2. In granting intervention under Rule 24(a)(2), the court agreed that this was a "sufficient interest" to support intervention. *Id.* And it did not matter that "Brown's claim [did] not directly target American Express," because "if the arbitration provision of the Cardmember Agreement does govern disputes between consumers and vendors, American Express has a specific interest in ensuring that those claims are resolved in its chosen forum." *Id.*

ESPN cited *Bone* and *Brown* in its brief (ESPN Mem. at 6), and the Plaintiffs did not expressly attempt to distinguish them in their opposition. (*See* Opp'n at 9-12.) Instead, they

argued that the arbitration clause does not apply to disputes between ESPN subscribers and WWE—a claim that, if true, might arguably distinguish this case from *Bone*, because the arbitration clauses in that case expressly encompassed third parties. *See Bone*, 2023 WL 5431139, at *4 (noting that the RUSCO app required arbitration of "any" employment disputes); *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013 (5th Cir. 2022) (ruling on another RUSCO intervention application, and noting that users of the RUSCO app agree to arbitration "not only their relationship with [RUSCO], but also their resulting work placements with" third parties). But ESPN, LLC and WWE both assert a right to arbitrate under the Subscriber Agreement, notwithstanding that BAMTech is the named party. (*See* Mot. to Compel Arb., Doc. No. 62.) To accept the Plaintiffs' argument would therefore be to reject ESPN's claimed interest in the arbitration clause on its merits, in contravention of the established rule that "an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th at 800.

The Court also concludes that, under the facts of this case, ESPN's "interest in defending itself against . . . allegations that [it] violated the law" is sufficient to support intervention. Although they sued only WWE, the Plaintiffs will necessarily be seeking a legal determination that ESPN violated CUTPA. Count Two of their complaint alleges a civil conspiracy in which ESPN "intentionally, knowingly, willfully, and/or recklessly engaged in an unfair method(s) of competition and/or an unfair and/or deceptive act(s)," and that WWE "knew about, joined in, and furthered the commission of ESPN's injury-producing actions." (Am. Compl., Doc. No. 18, ¶ 80.) Count Three charges WWE with "aid[ing] and abet[ting] ESPN's violation of CUTPA" by providing "assistance to ESPN in its illegal and/or tortious activity." (*Id.* ¶¶ 86, 88.) Thus, for the

Plaintiffs to prove the claims that they have pled against WWE, they must prove that ESPN broke the law, and indeed they do not dispute this point. (*See* Opp'n at 13-16) (failing to dispute that, at trial, they will seek to prove CUTPA violations by the ESPN entity that made the allegedly deceptive statements).

The Plaintiffs instead make three arguments, but the Court does not find them persuasive. First, they cite cases in which courts have noted that "[t]he analysis for 'necessary' party [status under Rule 19] and for intervention of right under Rule 24(a) is essentially the same," and they argue that, because co-conspirators are not necessary parties under Rule 19, ESPN does not have a right to intervene to defend itself. (Opp'n at 13.) Second and relatedly, they suggest in a footnote that intervention should be denied because ESPN, LLC "never explains how . . . a verdict against WWE could have a preclusive effect against it in some possible, as-of-yet-unfiled future litigation." (*Id.* at 14 n.18.) For its interest to be sufficient under Rule 24(a)(2), however, a proposed intervenor does not need to show that a judgment rendered in its absence would have *res judicata* effect in later litigation. *Allco Fin. Ltd.*, 300 F.R.D. at 87 (citing *Md. Cas. Co. v. W.R. Grace & Co.*, No. 88-Civ.-4337 (JSM), 1996 WL 34154, at *2 (S.D.N.Y. Jan. 30, 1996)). Rule 24(a) focuses instead on "the practical disadvantage suffered," *id.*, and a legal determination against WWE on Counts Two and Three in ESPN's absence could place ESPN at a practical disadvantage even if it did not have *res judicata* effect. *See N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of the Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975); *see also N. River Ins. Co. v. O & G Indus., Inc.*, 315 F.R.D. 1, 5 (D. Conn. 2016) (granting motion to intervene because, "[a]s a practical and probabilistic matter . . . the interests of the proposed intervenors would be impaired if they were not permitted to intervene").

Third, the Plaintiffs argue that even if "'ESPN' generically" has an interest in defending itself, that interest has not been shown to apply to ESPN, LLC or BAMTech. (Opp'n at 14.) Leaving aside whether that was true at the time it was written, ESPN has since explained that it was ESPN, Inc. that contracted with WWE; and that ESPN, Inc. converted itself into ESPN, LLC five months later. (*See* Decl. of Alan Schoenfeld, Doc. No. 78-1; Ex. A, Doc. No. 78-2; Ex. B, Doc. No. 78-3.) Thus, ESPN, LLC—and not "ESPN generically"—is the entity that "is willing to stipulate that it is implicated by . . . Diesa's and Toback's allegations." (Reply at 4.)

In summary, both ESPN, LLC and BAMTech have an interest in enforcing their arbitration clause, and at least ESPN, LLC has an interest in defending against the Plaintiff's allegations of CUTPA-violative misconduct. Under the facts of this case, these interests are sufficient to support intervention.

### ***3. Impairment of the Interest***

If the movant shows a sufficient interest in the action that it seeks to join, it must then show that it "is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Again, the inquiry "looks to 'the practical disadvantage suffered.'" *Allco Fin. Ltd.*, 300 F.R.D. at 87. It "does not require the would-be intervenor to go so far as to show that *res judicata* principles would affect any later suit they might bring.'" *Id.* (D. Conn. 2014) (quoting *Md. Cas. Co. v. W.R. Grace & Co.*, 1996 WL 34154, at *2). The Court concludes that this requirement is satisfied because, as noted above, a legal determination on Counts Two and Three in ESPN's absence could place ESPN at a practical disadvantage even if it did not have preclusive effect. *See N.Y. Pub. Int. Rsch. Grp., Inc.*, 516 F.2d at 352; *N. River Ins. Co.*, 315 F.R.D. at 5.

#### *4. Adequacy of Representation*

Even if the first three elements of Rule 24(a)(2) are satisfied, a court may deny intervention if "existing parties adequately represent [the] interest" claimed by the proposed intervenor. Fed. R. Civ. P. 24(a)(2). "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citing 3B J. Moore, Federal Practice 24.09-1(4) (1969)). Accordingly, this "last factor, adequacy of representation, is 'a minor factor at most.'" *Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp.*, No. 14-cv-5227 (ADS) (SIL), 2015 WL 5676786, at *12 (E.D.N.Y. Sep. 24, 2015) (quoting *Citizens for an Orderly Energy Pol'y, Inc. v. Suffolk Cnty.*, 101 F.R.D. 497, 502 (E.D.N.Y. 1984)).

Although a proposed intervenor's burden is not heavy, it is not non-existent, particularly in cases where the players are as aligned as ESPN and WWE appear to be. "While the burden to demonstrate inadequacy of representation is generally speaking 'minimal' . . . [the Section Circuit has] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and the named party has the same ultimate objective . . . ." *Butler, Fitzgerald & Potter*, 250 F.3d at 179. "Where there is an identity of interest" between the two, a presumption of adequate representation arises. *Id.* at 179-80. The presumption is rebuttable, and it can be overcome by "evidence of collusion, adversity of interest, nonfeasance, or incompetence." *Id.* at 180. "Nevertheless, 'where the same overall objective exists for the putative intervenor and one party in the lawsuit, the applicant must overcome the presumption of adequate representation." *Certified Multi-Media Sols., Ltd.*, 2015 WL 5676786, at *12 (quoting *Sackman v. Liggett Grp., Inc.*, 167

F.R.D. 6, 22 (E.D.N.Y. 1996)); *see also Commodity Futures Trading Comm'n v. Acluche*, No. 25-632, 2026 WL 707535, at *1 (2d Cir. Mar. 13, 2026) (summary order).

In this case, ESPN does not deny that it shares an "ultimate objective" with WWE. (*See* ESPN Mem. at 7-8.) Both companies of course seek to defeat the Plaintiffs' claims (Reply at 6), and moreover, both seek to force those claims into arbitration first. (Mot. to Compel Arbitration, Doc. No. 62.) In determining whether a proposed intervenor shares an "ultimate objective" with an existing party, courts often consider the relief they seek. *E.g.*, *United States v. Yale Univ.*, 337 F.R.D. 35, 42 (D. Conn. 2021) (holding that a proposed intervenor-plaintiff shared an "identity of interest" with, and sought "the same ultimate objective" as, the existing plaintiff, in part because its proposed complaint contained an essentially identical prayer for relief). Here, both ESPN and WWE seek not only the same ultimate result, but also the same order compelling the Plaintiffs to submit their claims to arbitration. (Mot. to Compel Arbitration, Doc. No. 62.) Because the companies have the same ultimate objective, a presumption arises that ESPN's claimed interests in the litigation will be adequately protected by WWE. *Butler, Fitzgerald & Potter*, 250 F.3d at 179-80.

In rebuttal, ESPN does not cite any "evidence of collusion, adversity of interest, nonfeasance, or incompetence" on the part of WWE. It instead argues that, because the allegations of misconduct levied against it and WWE do not overlap entirely (ESPN Mem. at 8 (citing Am. Compl., Doc. No. 18, ¶¶ 33-42)), it would be "incentivize[d] . . . to raise different arguments than WWE would," and might "pursue certain defenses more differently and more vigorously than WWE would." (Reply at 6.) But it fails to explain in a non-conclusory way how the non-overlapping allegations would lead to meaningfully different arguments or defenses, and elsewhere it has described the overlap as "complete." (Mem. of L. in Supp. of Mot. to Compel Arbitration,

Doc. No. 62-1, at 25) ("[T]here is essentially complete overlap between the issues raised by Diesa's and Toback's allegations against WWE and against ESPN."). It does note that, because BAMTech is a party to the subscriber agreement, that entity may have arguments for arbitration that ESPN, LLC and WWE lack. (ESPN Mem. at 7.) But this argument similarly fails to persuade, because the three companies have already moved to compel arbitration, and BAMTech has not raised those arguments. (*See generally* Mem. of L. in Supp. of Mot. to Compel Arbitration, Doc. No. 62-1.) Under these circumstances, ESPN's prediction that it might raise or emphasize different defenses or arguments is insufficiently established. *See, e.g., Allco Fin. Ltd.*, 300 F.R.D. at 87-88 ("Intervenors' speculative concerns are insufficient to rebut the presumption that the existing parties will adequately represent their interest.").

The cases cited by ESPN are not to the contrary. In *Brown*, the existing defendant and the proposed intervenor both agreed that the former could not enforce the latter's arbitration clause. 2018 WL 4538412, at *3. The proposed intervenor therefore "met its burden to show that [the defendant] may not adequately represent its interest" in enforcing its arbitration agreements, *id.*, but the same cannot be said here, where ESPN and WWE have jointly moved to compel arbitration with equal vigor and on the strength of the same arguments. (*See generally* Mem. of L. in Supp. of Mot. to Compel Arbitration, Doc. No. 62-1.) In *Certified Multi-Media Solutions, Ltd.*, but not here, the putative intervenor identified a real and non-speculative reason to suppose that the existing party "lack[ed] incentive to represent [its] interest." 2015 WL 5676786, at *13. In *Connecticut Fine Wine & Spirits, LLC v. Harris*, but not in this case, the proposed intervenors had a financial interest in the outcome but the existing defendant did not, and accordingly there was a non-speculative reason to believe that they would "make a more vigorous presentation of the economic side of the argument." No. 16-cv-1434 (JCH), 2016 WL 9967919, at *7 (D. Conn. Nov.

8, 2016). Moreover, in that case there were divergent interests even between the several intervenors, and it therefore could not be said that the defendant would adequately represent "all the movants, who have conflicting interests." *Id.* at *8. Finally, *United Specialty Insurance Co. v. Royal Parking Services, Inc.* is inapposite because in that case, the defendant failed to appear and defend his own interests, let alone the interests of the intervenor. No. 17-cv-1395, 2017 WL 3841855, at *2 (E.D.N.Y. Sep. 1, 2017).

The Court acknowledges that a proposed intervenor's burden to show inadequate representation is "minimal," and that this factor is "minor" in comparison to the other Rule 24(a)(2) factors. *Trbovich*, 404 U.S. at 538 n.10; *Certified Multi-Media Sols., Ltd.*, 2015 WL 5676786, at *12. But where, as here, the proposed intervenor and the existing party share an "ultimate objective," the Second Circuit has "demanded a more rigorous showing of inadequacy." *Butler, Fitzgerald & Potter*, 250 F.3d at 179. ESPN has not made that showing, and accordingly the Court concludes that it is not entitled to intervene as of right.

### C. Permissive Intervention Under Rule 24(b)

"Federal Rule of Civil Procedure 24(b) provides for intervention by permission, stating in relevant part that: '[o]n timely motion, the court *may* permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.'" *Floyd*, 770 F.3d at 1057 (quoting Fed. R. Civ. P. 24(b)) (emphasis in opinion). Although the text of the rule lists only two factors—timeliness and common questions—courts in the Second Circuit "typically consider the same four factors to determine permissive intervention as they would for mandatory intervention." *Granite State Ins. Co.*, 2025 WL 1502019, at *4 (quoting *Rocano Gen. Constr. Inc. v. U.S. Underwriters Ins. Co.*, No. 22-cv-6293 (PKC) (JRC), 2024 WL 472864, at *2 (E.D.N.Y. Feb. 7, 2024)). "In the context of permissive intervention, however, 'district courts in the Second

Circuit have recognized that the four factors should be considered as a whole, rather than focusing narrowly on any one of the criteria, and that application of the factors is flexible and discretionary.'" *Id.* (quoting *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc.*, 2020 WL 5658703, at *5). While district courts enjoy broad discretion under either Rule 24(a) or 24(b), their "discretion is 'particularly broad when deciding a motion for permissive intervention.'" *In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 1726973, at *1 (quoting *High Farms, LLC*, 2021 WL 1137995, at *11).

In deciding motions for permissive intervention, courts must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Indeed, the Second Circuit has identified delay and prejudice as the "principal consideration[s]" in deciding motions under Rule 24(b). *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978); *see also Citizens Against Casino Gambling in Erie Cnty. v. Hogan*, 417 F. App'x 49, 50 (2d Cir. 2011) (summary order) (listing "undue delay or prejudice" first among the considerations relevant to a Rule 24(b) motion). In *Green v. Biden*, for example, the court permitted the National Resources Defense Council and other environmental advocacy groups to intervene in a case brought by commercial fishermen against the United States government, in part because it was "unpersuaded that the Proposed Intervenors will lead to undue delays and prejudice existing parties." No. 24-cv-1975 (MKB), 2024 WL 4932751, at *7 (E.D.N.Y. Dec. 2, 2024).

The Plaintiffs appear to contend that the standards for permissive intervention are essentially indistinguishable from the standards for intervention as of right, notwithstanding the textual differences between Rules 24(a) and 24(b). (Opp'n at 20; *see also* Tr. of Hr'g, Doc. No. 86, at 25:6-10.) They cite *Brody by and Through Sugzdinis v. Spang*, in which the Third Circuit observed that "if the [proposed intervenor] cannot meet the test for intervention as of right, then,

under the circumstances of [the] case it would likely be within the district court's discretion to deny permissive intervention as well." 957 F.2d 1108, 1124 (3d Cir. 1992). The Second Circuit said something similar in *Floyd*, noting that "[f]ailure to satisfy *any one* of" the four traditional Rule 24(a) factors "is a sufficient ground to deny the application," irrespective of whether that application is for "intervention as of right or by permission." 770 F.3d at 1057. But these cases do not support the proposition that failure to satisfy one of the four 24(a) factors *compels* denial of a 24(b) motion, as the Plaintiffs appear to contend.

Indeed, this point was cogently explained in a case cited by the Plaintiffs themselves. In *Comcast of Conn./Ga./Mass./N.H./N.Y./N.C./Va./Vt., LLC v. Vermont Public Utility Commission,* Judge Crawford observed that "*Floyd* goes no further than stating that failure to satisfy one of the four 'requirements' is a 'sufficient' ground to deny intervention." No. 17-cv-161 (GWC), 2018 WL 11469513, at *4 (D. Vt. Feb. 8, 2018). He added that *Floyd* "does not hold that failure to satisfy one of the four factors necessarily requires denial of intervention in all cases." *Id.* "Rather, courts apply the factors in a 'flexible and discretionary way, considering all four factors as a whole rather than focusing narrowly on any one of the criteria.'" *Id.* (quoting *Windsor v. United States*, 797 F. Supp. 2d 320, 323-24 (S.D.N.Y. 2011)).

Because the application is "flexible," courts often grant Rule 24(b) intervention even when Rule 24(a) intervention has been denied for failure to satisfy one of the four factors. In particular, "district courts routinely grant permissive intervention to applicants even in cases where the court has found that the existing party adequately represents the proposed intervenor's interest." *Green*, 2024 WL 4932751, at *7; *see also Hum. Servs. Council of N.Y. v. City of New York*, No. 21-Civ.-11149 (PGG), 2022 WL 4585815, at *4 (S.D.N.Y. Sept. 29, 2022) (granting permissive intervention after denying intervention as of right on the ground that the intervenor's interest was

adequately represented); *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc.*, 2020 WL 5658703, at *13 (same); *New York v. U.S. Dep't of Health & Hum. Servs.*, No. 19-Civ.-4676 (PAE), 2019 WL 3531960, at *6-7 (S.D.N.Y. Aug. 2, 2019) (same). This is unsurprising, because unlike Rule 24(a), "'Rule 24(b) does not list inadequacy of representation as one of the considerations for the court' in exercising its discretion." *Allco Fin. Ltd.*, 300 F.R.D. at 88 (quoting *United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980)). "[A]lthough a court may consider [inadequacy of representation], it is clearly a minor factor at most." *Id.* (internal quotation marks omitted).

Applying these principles to this case, the Court concludes that ESPN should be permitted to intervene under Rule 24(b), for several reasons. First, ESPN's motions are timely. *See* Fed. R. Civ. P. 24(b)(1) (stating that permissive intervention may be granted "[o]n timely motion"); *Allco Fin. Ltd.*, 300 F.R.D. at 88 (addressing timeliness first, because under Rule 24(b) it is "the first requirement for permissive intervention"); (*see also* discussion *supra* Section II.B.1). Second, the Plaintiffs do not dispute that, if ESPN were to intervene, it would share many common questions of law or fact with WWE. (*See* Opp'n at 19-21.) Third and importantly, the Plaintiffs have not credibly identified any undue delay or prejudice that would follow from ESPN's intervention. They say that intervention would "inject collateral issues" because ESPN "asserts that it has its own contractual defenses, like the arbitration provision," (Opp'n at 20-21) (internal quotation marks omitted), but since WWE also claims rights under the arbitration clause in the Subscriber Agreement (*see* Mot. to Compel Arbitration, Doc. No. 62), there is no reason to suppose that ESPN's corresponding arguments will meaningfully add to the Plaintiffs' burdens or delay the resolution of their claims.

Fourth and finally, the Court concludes that ESPN should be permitted to intervene to defend itself against the allegation that it violated CUTPA. As ESPN notes, "CUTPA liability carries significant exposure," and "Diesa and Toback seek to establish those claims on behalf of a putative class." (ESPN Mem. at 7.) The Plaintiffs do not dispute that they cannot prevail on Counts Two or Three of their complaint against WWE without obtaining a judicial determination that ESPN violated CUTPA. (*See generally* Opp'n.) And as noted above, a legal determination against WWE on Counts Two and Three in ESPN's absence could place ESPN at a practical disadvantage even if it did not have *res judicata* effect. *See N.Y. Pub. Int. Rsch. Grp., Inc.*, 516 F.2d at 352; *N. River Ins. Co.*, 315 F.R.D. at 5 (granting motion to intervene because, "[a]s a practical and probabilistic matter . . . the interests of the proposed intervenors would be impaired if they were not permitted to intervene").

Considering the four mandatory intervention factors, *Granite State Ins. Co.*, 2025 WL 1502019, at *4; and concluding that the first three have been satisfied (*see* discussion *infra* Sections II.B.1-3); and further concluding that ESPN's failure to satisfy the fourth factor with the "rigor[]" required by the Second Circuit's Rule 24(a) case law is, at most, a "minor" consideration for Rule 24(b) purposes, *see Allco Fin. Ltd.*, 300 F.R.D. at 88; and, finally, concluding that there are many common issues of law and fact between ESPN and WWE; the Court holds that ESPN is entitled to permissive intervention under Rule 24(b).

**D. Rule 24(c)**

There is, however, one final issue to address. The Plaintiffs urge the Court to deny intervention on the ground that ESPN failed to comply with Rule 24(c). (Opp'n at 22.) That rule provides that an intervention motion "must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), and neither ESPN nor

BAMTech attached any such document to its original motion. (*See* ESPN Motion, BAMTech Motion.) Noting that "[t]he purpose of the rule is to provide information to the court and place the rother parties on notice of the claimant's position, the nature and basis of the claim asserted, and the relief sought by the intervenor," and claiming to be in the dark on these topics, the Plaintiffs argue that "this Court can and should deny [the motions] on this basis as well." (Opp'n at 22-24) (quoting *Secs. & Exch. Comm'n v. Am. Pension Servs.*, No. 14-cv-00309-RJS-DBP, 2015 WL 136322, at *1 (D. Utah Jan. 9, 2015)). ESPN responds that its initial motions "put Diesa and Toback on full notice of what [it] would assert as a party," and that even if its initial filing was technically defective, that defect was cured by the subsequent filing of its motion to compel arbitration. (Reply at 9-10.)

The legal principles governing this dispute are well-established. "In general, Rule 24(c) requires the submission of a formal motion and supplemental pleadings in order to trigger the motion." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002). "Where, however, the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." *Id.* (citing *Werbungs Und Commerz Union Austalt v. Collector's Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991)). Following these principles, courts across the Second Circuit have declined invitations to deny intervention motions for lack of a pleading when the proposed intervenor's claims or defenses are sufficiently clear from other submissions. *E.g.*, *id.; see also Comcast,* 2018 WL 11469513, at *2; *Windsor*, 797 F. Supp. 2d at 325; *Briscoe v. City of New Haven*, No. 09-cv-1642 (CSH), 2012 WL 13026762, at *5-6 (D. Conn. Oct. 5, 2012); *Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co.,* No. 00-cv-1808 (RNC), 2001 WL 789200, at *1 (D. Conn. May 14, 2001). To be sure, "Rule 24(c) is 'not a mere technicality,'" and non-compliance can

result in the denial of an intervention motion when the proposed intervenors "fail to articulate what claim or defense they are propounding." *In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 1726973, at *2. But the purposes of the rule are to "inform[] the parties of the movant's position" and to "enable the court to evaluate the motion to intervene," and where "both of these purposes have . . . been served" through other filings, "denial of the [motion to intervene] would be too strict a response" to a failure to attach a proposed answer. *Briscoe*, 2012 WL 13026762, at *5-6.

Applying these principles to this case, the Court declines the Plaintiffs' invitation to deny ESPN's motions for failure to comply with Rule 24(c). ESPN's "position . . . [was] apparent from other filings" even before the intervention motions were served; the parties' Rule 26(f) report, for example, explained that ESPN "intend[ed] to file a motion to intervene in this action and, if intervention is granted, a motion to compel arbitration of all Plaintiffs' claims, including all claims against WWE." (Rule 26(f) Report, Doc. No. 29, at 3.) And even if the Plaintiffs had still been in the dark about ESPN's plans for responding to the complaint, it removed any doubt by subsequently signing onto WWE's motion to compel arbitration. (Mot. to Compel Arbitration, Doc. No. 62.) The Plaintiffs argue that this filing did not cure the defect, and they contend in substance that Rule 24(c) is not satisfied unless and until the putative intervenor files a proposed answer identifying its affirmative defenses. (Tr. of Hr'g, Doc. No. 86, at 15:20-16:7.) But they cite no genuine authority for that proposition,[5] and indeed, one of their cited cases is to the contrary.

---

[5] The Plaintiffs referenced *In re OpenAI, Inc., Copyright Infringement Litigation* at oral argument, but even that case acknowledged that "[c]ourts have held that the failure to attach a proposed pleading is not necessarily fatal to a motion to intervene." 2025 WL 1726973, at *2. In that case, the intervention motion did not fail simply because the proposed intervenor neglected to attach a proposed answer with affirmative defenses. Rather, it failed because he did not "articulate what claim or defenses [he was] propounding," whether in a proposed answer or otherwise, and the court could not "readily determine what claims or defenses [he was] trying to assert." *Id.*

*United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 412 (W.D. Pa. 2006) (holding that, when an intervention motion "contains no pleading, but instead includes a motion to compel arbitration and stay the proceedings," Rule 24(c) was not an impediment to considering the intervention motion on its merits). In summary, the Court concludes that Rule 24(c) was not materially traversed at the time ESPN filed its motions, and even if it had been, the defect has been subsequently cured.

## III. Conclusion

In closing, the Court wishes to acknowledge the very first thing the Plaintiffs said in their opposition. It is true, as the Plaintiffs stated, that they are the masters of their complaint. (Opp'n at 1.) It is also true that they can choose which party to sue, and when they have been the victims of a multi-party conspiracy, they do not have to sue all the conspirators. (*Id.*) But ESPN is just as right when it says that "Rule 24 exists because plaintiffs sometimes exclude parties with a right and reason to participate." (Reply at 1.) Because permissive intervention is warranted here, the motions of ESPN, LLC and BAMTech, LLC to intervene in the captioned case (Doc. Nos. 34, 49) are granted under Fed. R. Civ. P. 24(b)(1)(B). The Clerk of the Court is respectfully directed to add ESPN, LLC and BAMTech, LLC to the docket as defendants.

This is not a recommended ruling subject to *de novo* review by the District Judge under 28 U.S.C. § 636(b)(1)(B). Rather, it is a final "determin[ation]" of a "pretrial matter" referred by the District Judge to a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). *See* 28 U.S.C. § 636(b)(1)(A); *see also Chen-Oster v. Goldman, Sachs & Co.*, No. 10-Civ.-6950 (AT) (JCF), 2016 WL 11645644, at *1 (S.D.N.Y. June 6, 2016) (collecting cases supporting the proposition that a motion to intervene "is non-dispositive and must be reviewed for clear error."); *but see Medina v. Fischer*, No. 11-Civ.-176 (LAP) (JLC), 2013 WL 1294621, at *1 n.1 (S.D.N.Y. Mar. 29, 2013)

("err[ing] on the side of treating [an intervention] motion as dispositive," "at least insofar as it is brought 'as of right' under Rule 24(a)"). If the Plaintiffs nevertheless wish to seek review by the District Judge, their written objection must be filed with the Clerk of the Court by October 2, 2026. *See* D. Conn. L. Civ. R. 72.2(a).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge